St. Louis-San Francisco Railway Company *v.* McClinton.

Opinion delivered October 22, 1928.

*E. T. Miller, E. L. Westbrooke, Jr.,* and *E. L. West-brooke,* for appellant.

*Sam Costen, Wils Davis* and *Joe Simmons,* for appellee.

SMITH, J. This appeal is prosecuted to reverse a judgment recovered by appellee to compensate an injury sustained by him through the alleged negligence of the members of one of appellant's switching crews.

Appellee was employed, at the time of his injury, by a compress company at West Memphis, Arkansas. The compress company has two rows of sheds, in which bales of cotton are stored, the larger being about 1,800 feet in length. The shorter row of sheds is parallel to the larger one. These rows are divided by partitions into sections, and the one at which appellee was working had eleven sections, and appellee had been unloading cotton out of railroad cars into section No. 9.

The appellant railroad company has switching tracks along both sides of the longer row of sheds, up and down which tracks cars are placed for loading and unloading. There are four removable platforms connecting the two rows of sheds, which, when in position, cross the switch-track which runs between the two rows of sheds. By the use of these platforms cotton unloaded into the shorter row of sheds is carried to the compress, and while these platforms are down or in place no switching is done or could be done on the switch-track between the two rows of sheds.

Appellee worked in section 9 until the noon hour, when work was suspended for lunch, thirty minutes being allowed for that purpose. Going to his lunch, appellee crossed the switch-track running in front of and parallel with the row of sheds where he had been at work, and went to the home of Gus Woods, where he ate his lunch. The railroad tracks and the compress sheds run nearly north and south, and appellee was working on the south end of the larger shed, and on his return to his place of work he climbed between two cars. These cars, with several others, were attached to a switch

engine, which could not be seen by appellee because of a curve in the switch-track. Appellee went between the cars as a short way of returning to his work, and he testified that he had seen other employees of the compress company do the same thing. On behalf of the railroad company the testimony was to the effect that, when any one was seen crossing or attempting to cross between the cars, warning was given of the danger; but there was no testimony that appellee had been warned.

Appellee did not know there was an engine attached to the string of cars between two of which he attempted to cross, and, as he did so, the cars came together and caught his foot between the drawhead and deadwood of a car, and injured him severely.

The jury returned a verdict for substantial damages, and this appeal has been duly prosecuted.

Respective counsel discuss the question whether appellee, at the time of his injury, was a mere trespasser, a licensee, or an invitee, for the purpose of determining the degree of care due appellee by the railroad company; but we have found it unnecessary to determine this question, for the reason that, in our opinion, the negligence of appellee is greater than that of the defendant railroad company, and this fact prevents a recovery by him.

It is provided by § 8575, C. & M. Digest, that in all suits for personal injury caused by the running of trains in this State the contributory negligence of the person injured shall not prevent a recovery where the negligence of the person injured is of less degree than the negligence of the employees of the railroad company causing the injury, but the amount of recovery is to be diminished in proportion to such contributory negligence.

The case of *St. Louis-San Francisco Ry. Co.* v. *Horn*, 168 Ark. 191, 269 S. W. 576, involved the application of the statute quoted, and the court there refused to compare the negligence of the party injured with that of the railroad company, but it was there said:

"Each case must, of course, be considered upon its own peculiar facts, and the legal sufficiency of the evidence on the question of degree of negligence must be tested, the same as in other cases, by the state of the testimony presented in a given case. In other words, it is ordinarily a question of fact for the determination of the jury, but there may, as in other cases, be presented a question for the decision of the court as to the legal sufficiency of the evidence."

We must therefore assume that the jury accepted as true the testimony offered in appellee's behalf, with all the inferences reasonably deducible therefrom, and we would be required to affirm this judgment, as was done in the Horn case, *supra*, if, after so weighing the testimony, we were left in doubt as to whether appellee's negligence was of a less degree than that of the operatives of the train. We are of the opinion, however, that there is no reasonable view of the testimony which would support the finding that appellee's negligence contributing to his injury was of a less degree than that of the railroad company.

In so holding we have in mind the decisions of this court in which it was held that it is the duty of carriers to exercise ordinary care in moving its cars to prevent injury to owners of freight and their employees rightfully engaged in loading or unloading cars. It has been said that appellee, before his lunch, had been engaged in unloading a car, and that he was on his way, after eating his lunch, to continue that work, but it must be remembered that at the time of his injury appellee was not engaged in unloading a car. He was not at his place of employment, but was injured while climbing between two cars. No practical lookout which a train crew could maintain would suffice to prevent one from climbing between cars, and the undisputed testimony shows that no member of the train crew saw appellant as he went between the cars, nor is there any testimony or inference therefrom which would support the finding that the railroad company could have done anything

which would have averted appellee's injury, except not to switch its cars, a right which it, of course, had. The undisputed testimony is that a lookout was being kept by a switchman on the top of moving cars, but this employee testified that he did not see appellee at all until after his injury. Appellee, had he looked, must have known that all the platforms were up, which fact was a warning that switching might be done, and he must necessarily have known there was peril in climbing between cars which might be moved.

There is a presumption of negligence arising out of the fact that appellee was injured by the operation of a train; but the undisputed testimony is such that it must necessarily appear that appellee's negligence was greater than that of the operatives of the train, and, this being true, a recovery is not authorized by § 8575, C. & M. Digest.

It follows therefore that the judgment of the court below must be reversed, and, as the cause appears to have been fully developed, it will be dismissed.