GRIFFIN *v.* BRIDGER.

4-8569

212 S. W. 2d 24

Opinion delivered June 14, 1948.

Rehearing denied July 5, 1948.

*E. D. McGowan,* for appellant.

*Eugene Sloan,* for appellee.

MINOR W. MILLWEE, Justice. This suit was begun by appellant, Jesse G. Griffin, as plaintiff in the chancery

court against appellee, Floyd R. Bridger, for an accounting.

Plaintiff alleged that on June 8, 1943, he executed and delivered to defendant a note and chattel mortgage to secure an indebtedness which he owed defendant in the sum of $3,292; that on November 13, 1943, plaintiff also executed and delivered to defendant a bill of sale to secure defendant for money which the latter advanced to pay a loan owed by plaintiff to the Jonesboro Production Credit Association; that defendant refused, after demand, to give an accounting of monies or property which he had received pursuant to said conveyances; and that the value of the property delivered as security was $4,000 greater than the amount of plaintiff's indebtedness to defendant and the credit association. Plaintiff prayed for an accounting and judgment for such sums in excess of the indebtedness as might be found due him.

The answer of defendant admitted the execution of the mortgage and bill of sale by plaintiff, but denied that the bill of sale was in fact a mortgage, or that it was executed to secure defendant for money advanced by him to pay plaintiff's debt to the credit association. It was further alleged that the bill of sale was executed for the purpose of vesting absolute title to the property described therein in defendant and that said instrument was an absolute bill of sale; that defendant on January 4, 1944, paid the balance due by plaintiff to the credit association in the sum of $1,286.35; that plaintiff sold a part of the property covered by the mortgages to the credit association and defendant, without applying all the proceeds of the sale to the payment of either of said mortgages; and that the amount of the loans and advances to plaintiff, and on his behalf, exceeded the actual value of the property covered by the bill of sale and plaintiff was without further interest in said property.

The chancellor found all issues in favor of defendant and specifically that the instrument executed by plaintiff in favor of defendant on November 13, 1943, is in fact a bill of sale and not a chattel mortgage; and that the cause of action should be dismissed at plaintiff's cost.

The defendant has been engaged in the farming, ginning and mercantile business near Jonesboro in Craighead county for a number of years. Plaintiff married defendant's daughter and had engaged in farming with his father-in-law for several years prior to 1943. Defendant extended financial assistance to plaintiff from time to time to carry on his farming operations and a running account of these transactions was kept on the books of defendant. On February 3, 1943, plaintiff borrowed $2,500 from the Jonesboro Production Credit Association and executed a chattel mortgage on his livestock, farming implements and 1943 crops to secure said loan. On June 8, 1943, plaintiff owed defendant $3,292 on the open account and executed his promissory note to defendant due November 15, 1943, for this amount. The note was secured by a chattel mortgage on the same chattels described in the prior mortgage to the credit association and it was understood between the parties that defendant's mortgage was subject to the mortgage held by the association. The mortgage to defendant also secured all other indebtedness which might be due defendant at the time of a foreclosure thereof.

On November 13, 1943, plaintiff executed, acknowledged and delivered an instrument designated as a bill of sale transferring title to defendant to all the property covered by the above-mentioned mortgages. This instrument contains the usual provisions of a bill of sale and stipulates that in consideration of the sum of $1.00 to him paid by defendant, the plaintiff does bargain, sell, set over, transfer and deliver to defendant the personal property therein described. It also provides the usual warranty of title to the property and that it is free of all encumbrances except the chattel mortgage held by defendant.

The instrument contains two additional paragraphs which read as follows: "This bill of sale covers any other personal property that I may own and may not be listed above, except personal effects. . . .

"The purpose of this instrument is to authorize and empower the said F. R. Bridger to use, sell and dispose

of any or of all said property in his discretion and to vest absolute title to any vendee, it being understood that the proceeds from any sales shall first be applied on any indebtedness that the undersigned may owe the said F. R. Bridger and any balance remaining after the payment of said indebtedness to him shall be used by the said F. R. Bridger as he may see fit.''

Plaintiff and his wife had been separated for several months prior to November 13, 1943. Defendant had counseled with both about their marital troubles and the friendly business relations between plaintiff and defendant continued. Prior to the date of the execution of the bill of sale plaintiff had made plans to accept employment at a war plant in Wichita, Kansas. According to the testimony of defendant, plaintiff at that time advised him that he was leaving the country; that he wanted to pay defendant, but did not have the money and was unable to sell the mortgaged property for enough to pay his debts; and that he wanted defendant to take over his personal property, pay the indebtedness to the credit association and defendant and, if any balance remained, to use it as defendant saw fit.

Plaintiff left for Kansas on the day following the execution of the bill of sale. A witness who accompanied him on the trip, and was employed at the same plant, testified that plaintiff picked up a woman at Walnut Ridge, Arkansas, who accompanied them to Kansas and stayed at the place where plaintiff and witness roomed; that plaintiff said he did not expect to live in Jonesboro again and introduced the woman to people in Wichita as his wife.

Plaintiff had been deferred for military duty on account of his farming activities prior to January 7, 1944, when his draft classification was changed. The following day he enlisted in the Naval Reserve and was discharged March 25, 1944. He testified that the bill of sale was given to defendant with the understanding that the latter should handle his business while he was away and that he made several demands on defendant for a settlement soon after his discharge from the Navy. This was denied

by defendant who stated that the provisions of the bill of sale were in strict compliance with their agreement and that plaintiff made no demand for a settlement or indicated that he claimed any further interest in the property until this suit was instituted in September, 1945. Plaintiff and his wife were divorced in February, 1945, and she was awarded custody of their daughter. Defendant paid the balance of $1,286.35 due by plaintiff to the Jonesboro Production Credit Association on January 4, 1944. In December, 1944, he sold a herd of cattle covered by the mortgage at public auction for $2,323. He continued to keep a detailed account showing the indebtedness and various credits thereon and stated that this was done for the purpose of ascertaining whether a surplus would remain after debts and expenses were paid and with the intent to turn over any surplus to his daughter for the use and benefit of his granddaughter, the child of plaintiff.

The evidence further shows that the bill of sale as originally prepared provided that any balance remaining after payment of plaintiff's indebtedness should be "paid over to Helen Griffin, my wife." It is undisputed that plaintiff objected to this provision before he signed the instrument. Defendant testified that this provision was scratched out and the words "used by the said F. R. Bridger as he may see fit" interlined in longhand in ink at the request of plaintiff after he kept the instrument overnight. Plaintiff stated that before signing the instrument he changed the foregoing provision by striking the name of his wife and writing in the name of his daughter. We have carefully examined the original bill of sale which is in the record and are unable to agree with plaintiff's present contention that ink eradicator has been used to alter the instrument. The testimony of defendant as to the interlineation is corroborated by that of the notary public who took plaintiff's acknowledgment and by the surrounding circumstances.

For reversal of the decree plaintiff contends that the trial court erred in holding the instrument executed on November 13, 1943, to be in fact a bill of sale instead

of a chattel mortgage. Plaintiff relies on decisions of this court holding that a bill of sale, absolute in its terms, becomes a chattel mortgage upon proof by clear and decisive evidence that it was given as security for a debt. *Trieber* v. *Andrews,* 31 Ark. 163. Plaintiff earnestly insists that he has met the burden of proof and is entitled to an accounting from defendant who occupies the position of a mortgagee in possession.

In determining the right of plaintiff to maintain the instant suit, we reach the conclusion that it is unnecessary to decide whether the instrument here involved is a bill of sale, chattel mortgage or an assignment for the payment of debts. The instrument contains many of the essential elements of an assignment. The distinction between a chattel mortgage and an assignment is stated in 10 Am. Jur., Chattel Mortgages, § 17, as follows: ''The difference between them is that a chattel mortgage is merely a pledge, lien, or security for a sum of money due, while an assignment passes the complete title with the possession to the assignee, without the defeasance clause, and is a wiping out or full settlement of the debt, while a chattel mortgage does not extinguish the debt.'' If at the time of the execution of the instrument it was the intention of the parties to divest the debtor of the title, and so make an appropriation of the property affected to the raising of a fund to pay debts, then the instrument is an assignment and not a mortgage. *Smead* v. *Chandler,* 71 Ark. 505, 76 S. W. 1066, 65 L. R. A. 353.

If it be conceded that the instrument was given as security for, and recognized the continued existence of, the indebtedness, it further provided that any surplus remaining after payment of the indebtedness should be applied as defendant saw fit, and the preponderance of the evidence supports the conclusion that this was the real intention of the parties. If, however, the instrument, as actually executed, provided that any remaining surplus should be paid to the daughter of plaintiff, as plaintiff contends, this would give plaintiff no right to maintain a suit for the recovery of such surplus in his own right, as he is attempting to do here. Plaintiff has not

sued for the benefit of his daughter whose permanent custody now rests in the child's mother and defendant has continued the keeping of books of the transactions with the intention of applying any surplus for the use and benefit of said child.

Under the terms of the instrument under consideration title and right to possession of the chattels passed to defendant with the right of appropriation and sale of the property for the raising of a fund to pay the debts of plaintiff. The instrument contains no defeasance clause and provides that any surplus remaining after payment of plaintiff's indebtedness shall be used by defendant as he may see fit. This provision was placed in the instrument at the suggestion of plaintiff because he did not want his estranged wife to participate in any balance remaining after the payment of his debts. Plaintiff has neither alleged nor proven fraud on the part of defendant in the execution of the instrument and is precluded from maintaining the instant suit in which he seeks to recover for himself a possible surplus that, under his own testimony, was to be paid over to his daughter. It follows that the trial court correctly dismissed the suit of plaintiff and the decree is, therefore, affirmed.